IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMARRIS LEWIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | NO. 3:21-cv-00859 |
| | ) | |
| MONTGOMERY COUNTY JAIL STAFF, et al., | ) | JUDGE CAMPBELL |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court is a pro se complaint for alleged violation of civil rights pursuant to 42 U.S.C. § 1983 (Doc. No. 1), filed by Jamarris Lewis and Hamid Houbbadi, two inmates of the Montgomery County Jail in Clarksville, Tennessee.[1]

The matter is before the Court for a ruling on Plaintiffs' applications for pauper status (Doc. Nos. 9 & 11) and an initial review of the Complaint pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

### I. APPLICATIONS TO PROCEED IN FORMA PAUPERIS

Under 28 U.S.C. § 1915(a), prisoners bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because it appears from Plaintiffs' submissions that they lack sufficient financial resources from which to pay their share of the filing fee in advance, the Court will grant them pauper status by separate Order.

---

[1] A third inmate, Donald Doss, signed the complaint but failed to keep the Court apprised of his current address and failed to comply with the Court's deficiency order (Doc. No. 7). Accordingly, Doss's case will be dismissed by separate order.

## II. INITIAL REVIEW

### A. PLRA Screening Standard

The Court must conduct an initial review and dismiss the Complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e. To determine whether the Complaint states a plausible claim, the Court "must (1) view the complaint in the light most favorable to the plaintiff[s] and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiffs sue under 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). To state a Section 1983 claim, Plaintiffs must allege: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

### B. Plaintiffs' Allegations

Plaintiffs sue the Montgomery County Jail Staff and the Southern Health Partners Nurses Staff (Doc. No. 1 at 2), claiming violations of their Eighth and Fourteenth Amendment rights and seeking $10 million in damages and other relief based on "mental [emotion] injuries" that resulted

2

from their 14-day lockdown between September 25 and October 8, 2021, "for what guards a[nd] nursing staff claim[ed] [was] a positive inmate for COVID 19/delta, which was later rev[ealed] [to] be totally false." (*Id.* at 3–5.) Plaintiffs were not tested for COVID-19 or allowed to shower or exercise during this quarantine period, which exceeded the 10-day quarantine recommended under "Tennessee CDC guidelines" and caused them to "suffer stress[s] and depre[ss]ion." (*Id.* at 5, 7.) Plaintiffs claim that while the guards and nursing staff who were exposed to the supposedly COVID-positive inmate did not quarantine, but were "working as normal," Jail inmates were forced to endure "hole[-]type treatment for no reason but assumption," regardless of whether or not they were vaccinated. (*Id.* at 12.) Plaintiffs state that "[i]f there was proof of [the affected inmate] being positive then we would not complain but that is not the case." (*Id.* at 12–13.)

Plaintiff Houbbadi subsequently filed a separate "Claim for Relief" in which he restates the allegations of the Complaint, arguing that the Jail inmates were deprived of their constitutional rights during a 14-day lockdown because the nursing staff erroneously "thought a[n] inmate . . . had COVID19." (Doc. No. 6.)

**C. Analysis**

Because "pretrial detainees cannot be punished at all," the proper inquiry in evaluating detainees' claims of unconstitutional conditions of confinement is "whether those conditions amount to punishment." *Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 569 (6th Cir. 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "The [Supreme] Court has instructed that '[a]bsent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the challenged condition] may rationally be connected is assignable for it, and whether it appears excessive in

relation to the alternative purpose assigned [to it]."' *Id.* (alterations in original; internal quotation marks omitted) (quoting *Wolfish*, 441 U.S. at 538–39).

Without question, locking inmates down for 14 days due to a suspected case of COVID-19 is not excessive in relation to the concern over transmission of the virus within the Jail setting. As the district court in *Carolina v. Feder* put it when dismissing a claim based on a 14-day, COVID-19-related lockdown:

> In normal times, courts must "accord substantial deference to the professional judgment of prison" officials on matters of prison administration. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *see also Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir. 1995). In attempting to prevent and stem COVID-19 outbreaks, prison officials are plainly entitled to that substantial deference. COVID-19 poses an incredible risk in prisons and detention centers. *See United States v. Skelos*, 2020 WL 1847558, at *1 (S.D.N.Y. Apr. 12, 2020) ("Jails and prisons are powder kegs for infection."); *United States v. Williams*, 2020 WL 7048244, at *2 (S.D.N.Y. Dec. 1, 2020); *United States v. Mongelli*, 2020 WL 4738325, at *2 (E.D.N.Y. Aug. 14, 2020) ("[T]he COVID-19 pandemic poses a serious health risk to this country's prison populations."); *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 135 (2d Cir. 2020) (describing COVID-19 as a "dramatic challenge" and "recent emergency," the "impact" of which "on jail and prison inmates ... may be grave and enduring").

*Carolina v. Feder*, No. 3:20-CV-658 (SRU), 2021 WL 268854, at *8 (D. Conn. Jan. 26, 2021), *reconsideration denied*, No. 3:20-CV-658 (SRU), 2021 WL 723534 (D. Conn. Feb. 24, 2021). In light of these concerns, the *Carolina* court found that, despite alleging that medical staff lied about a positive test result to justify a two-week inmate quarantine (without the ability to shower or enjoy other privileges) based merely on symptoms that might have indicated COVID-19, the plaintiff's "belief that his quarantine status should have been tied exclusively to COVID-19 test results is simply his own medical assessment" and his complaints about the effects of quarantine were "essentially trivial" while the quarantine order was "highly sensible." *Id.* at *3, 7–8.

These findings and descriptions are equally applicable to the case before this Court. Furthermore, even more deference is due the decision to institute a COVID-19-related Jail

lockdown during the fall of 2021, given that the dangerous Delta variant of COVID-19 had recently been "on the rise," *United States v. Jackson*, No. 11-20493, 2021 WL 3417910, at *3 (E.D. Mich. Aug. 5, 2021), and was "thought to be more virulent and capable of causing more severe illness than were earlier strains of COVID-19." *United States v. Bagley*, No. CR ELH-17-475, 2021 WL 5084694, at *7 (D. Md. Nov. 1, 2021) ("Although this country saw a reduction of COVID-19 cases in prior months, the spread of the Delta variant reversed this trend."). The fact that the Jail inmate suspected of having Delta-variant COVID-19 did not ultimately test positive for the virus does not render Jail staff's precautionary quarantine of inmates excessive in relation to the perceived threat of transmission.

In short, Defendants' imposition of a brief period of stringent quarantine in response to an unprecedented threat of contagion cannot be said to amount to punishment. Plaintiffs' claim to the contrary is not viable.

### III. CONCLUSION

In light of the foregoing, Plaintiffs' applications for pauper status will be granted and this action will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE